IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 1:11-CR-056** |
| | : | |
| **v.** | : | |
| | : | |
| **JOANNE M. SEELEY** | : | |

# **M E M O R A N D U M**

## I. Background

Before the court is a motion by defendant Joanne M. Seeley ("Seeley") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2255 in which she alleges that her counsel, Lori Ulrich ("Ulrich"), was incompetent in matters relating to pretrial, trial, and post-trial proceedings. New counsel was appointed to represent Seeley for purposes of this motion and a hearing was held on January 17, 2013. The motion has been fully briefed and is ripe for disposition.

Seeley was charged in a ten-count indictment on February 23, 2011, which included five counts of wire fraud (Counts 1 - 5) and five counts of money laundering (Counts 6 - 10). On November 7, 2011, Seeley was convicted by a jury of Counts 1, 2, 3, 5, 6, 7, 8, and 10. Counts 4 and 9 were dismissed prior to trial. She was sentenced on July 24, 2012. A notice of appeal was filed on July 25, 2012 but the appeal was dismissed pursuant to Federal Rule of Appellate Procedure 42(b) on September 5, 2012. The instant motion was timely filed on October 22, 2012.

## II. Discussion

### A. Ineffective Assistance of Counsel Standard

A claim for ineffective assistance of counsel is evaluated under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The standard

has two prongs. First, the petitioner must show that (1) the performance of trial counsel fell below an objective standard of reasonableness, and (2) the performance of counsel unfairly prejudiced the defense. *Id.* at 687-88, 691 (1984). The first prong requires the petitioner to show that counsel made errors "so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Id.* This showing can be made by demonstrating that the attorney's performance was unreasonable under prevailing norms. *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1993). The second prong of *Strickland* requires petitioner to show that the errors were "sufficiently serious as to deprive the defendant a fair trial, a trial whose result is liable." *Strickland*, 466 U.S. at 687. To establish prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Mannio*, 212 F.3d 835, 840 (3d Cir. 2000).

Seeley's claims will be addressed with these precepts in mind.

**B. Incompetency of Counsel Allegations**

Seeley makes the following claims of incompetency of trial counsel: (1) counsel failed to request a competency hearing prior to trial; (2) counsel failed to adequately discuss the plea agreement with defendant prior to trial during a period of time when defendant was competent to evaluate the offered plea; (3) counsel failed to present expert evidence on defendant's mental state at the time of the offense to rebut the *mens rea* element of the crimes; (4) counsel failed to present factual testimony (Susan Garretson) on defendant's mental state at the time of the offense to rebut the *mens rea* element of the crimes; (5) counsel failed to adequately investigate mitigating evidence on the 37 properties identified in the indictment and discussed at trial, instead unsuccessfully moving to keep the transactions out of evidence; (6) counsel failed to investigate and present evidence that defendant did not recruit

2

James Deardorff; (7) counsel failed to disclose to the court a complete breakdown in communication between her and defendant prior to trial; (8) counsel misled the defendant about the stipulation to loss amounts for sentencing purposes; (9) counsel failed to call satisfied investors as defense witnesses at trial; (10) counsel failed to request a competency hearing prior to sentencing; and, further, that the trial court failed to hold a competency hearing prior to sentencing despite having sufficient cause to question defendant's competency at that point based on the letter from the defendant and the *ex parte* hearing; and (11) counsel had a conflict of interest due to the breakdown in communication with defendant and should have requested permission to withdraw prior to trial and/or prior to sentencing.[1]

1. Failure to Request Competency Hearing Prior to Trial

A competency evaluation to stand trial was performed on Seeley on June 20, 2011, by Kristi Compton, Ph.D. (Doc. 157.) She diagnosed Seeley to have a serious mental illness of Bipolar Disorder and Borderline Personality Disorder. Based on this evaluation, her conclusion was that Seeley was not competent to stand trial. (*Id*. at p. 26.) In that report, Dr. Compton also opined that Seeley could "be restored to competency if her medications are changed and/or adjusted to moderate symptoms and if she takes the medications on a regular and ongoing basis. . . . With appropriate treatment, she should be restored to competency in the foreseeable future" (*Id.* at pp. 26-27.)

In light of this evaluation, Ulrich was faced with trying to get her client to a level of competency or advise the court to hold an incompetency hearing pursuant to 28 U.S.C. § 4241 where, if found to be incompetent, Seeley would be held in the custody of the United States Attorney General for a specified period of

---

[1] At the January 17, 2013, hearing on the § 2255 motion, Seeley's counsel advised the court that this issue is covered under item 7 and will be discussed thereunder.

time.  Ulrich was also faced with a client who did not want to be found incompetent. (Doc. 148 at p. 120; *see also* Doc. 157 at p. 27.)  In a letter to Seeley dated August 1, 2011, Ulrich advised her of the need to be competent to stand trial and that she, Ulrich, might be forced to seek a competency hearing by the court.  (Doc. 159.)

In facing this dilemma, Ulrich made every effort to get her client on a medication regimen suggested by Dr. Compton.  On September 2, 2011, Dr. Compton did another evaluation of Seeley.  (Referenced on Doc. 145, § 2255 Hearing Exhibit List, Govt. Ex. 3 (hereinafter "Govt. Ex. 3").)  Dr. Compton opined that Seeley was competent to stand trial.  (*Id*. at p. 8.)  Dr. Compton evaluated Seeley in accordance with *Dusky v. United States*, 362 U.S. 402 (1960), which required that in order for a person to be presumed competent to stand trial, the defendant must have a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him."  *Id.*

Dr. Compton found that Seeley had the capacity to appraise the roles of all the participants in a trial; she could relate to counsel, comprehend instructions and advise and make decisions after advice; could testify and be cross examined; could exhibit appropriate courtroom behavior; could understand the charges against her, the dispositions, pleas, and possible penalties; had the capacity to disclose facts surrounding the alleged offenses, events and states of mind; and that medication currently in use was not impacting her ability to engage with others.  (*Id*. at pp. 5-7.)

The trial of this case commenced on October 31, 2011, two months after this second evaluation.  Based on this second evaluation, there would have been no cause for defense counsel to have requested an incompetency hearing prior to trial. Trial counsel's strategy pretrial was reasonable and in accordance with her client's

expectation – that she be found competent to stand trial. The allegation of incompetency for failure to request a competency hearing is without merit.

### 2. Inadequate Plea Agreement Discussions Between Counsel and Defendant

Seeley contends that she has no recollection of hearing the government's July 2011 plea agreement offer explained to her. At both the July 11, 2012 *ex parte* hearing and the § 2255 hearing held January 17, 2013, Ulrich testified that she and Rich Garvey, the special investigator for the Public Defender, flew to Texas and spent long hours going over the plea agreement, as well as the facts of the case, with Seeley. The meeting in Texas consumed an entire day and generated thirteen pages of hand-written notes by Ulrich. (Referenced on Doc. 145, § 2255 Hearing Exhibit List, Govt. Ex. 1 (hereinafter "Govt. Ex. 1"); *see also* Doc. 140 at pp. 49-50; and Doc. 148 at pp. 108-119.) The fact that the meeting took place was confirmed by special investigator Rich Garvey. (Doc. 140 at p. 49.)

Over the course of the government's investigation, Seeley was offered two plea agreements: one in or about May 2010[2] when she was represented by other counsel and the July 2011 plea agreement. Ulrich tried to discuss both plea agreements with Seeley. Seeley signed the first plea agreement; however, at a scheduled guilty plea hearing on May 4, 2010, she indicated she did not want to plead guilty. According to Ulrich, each time a discussion of pleading came up, Seeley's position was that she had done nothing wrong and had no interest in cooperating with the government. (Doc. 148 at pp. 105, 114. 118.)

The record disputes Seeley's contention that the plea agreements were never discussed with her. This claim of incompetency is without merit.

---

[2]The first plea agreement was filed with a felony information and was assigned to case number 1:10-CR-048. This case was dismissed by the government after Seeley declined to plead guilty.

> 3 & 4. Failure to Present Expert Evidence on Defendant's Mental State at Time of Offense and Failure to Present Factual Testimony of Susan Garretson on Seeley's Mental State to Rebut *Mens Rea* Element of the Crimes

Ulrich testified at the § 2255 hearing that the defense at trial was that Seeley acted in good faith, relying upon the advice of counsel. She believed that an insanity defense was not provable and would have been inconsistent with the proffered defense strategy. (Doc. 148 at p. 130.) Ulrich, however, did request at trial an instruction of diminished capacity or mental illness defense which was denied by this court.

In the psychological evaluation performed by Dr. Compton on September 2, 2011 (Govt. Ex. 3), she opined, "It is not probable that she was either acutely manic or severely depressed during the entire two year period she operated S&D Property Solutions. Rather, there were likely periods of relative stability in which she would have been capable of processing what was occurring." (*Id*. at p. 21.) Faced with the analysis, Ulrich believed an insanity defense was not possible and, in any event, would have been in conflict with their trial defense of "good faith reliance on advice of counsel." (Doc. 148 at p. 129.)

This court takes judicial notice of the fact that this case was a complex scheme to defraud. The damages included $ 2.4 million in homeowner equity loss covering 46 properties, with the loss to lenders totaling over $1.1 million and the loss to investors of $193,000.00. Such a complex and large-scale scheme required mental acuity. The court believes that counsel's strategy in not seeking a defense of insanity was well reasoned and warranted under the facts presented.

Susan Garretson testified at trial. She was not prevented from testifying as to her observations of Seeley. She testified as a lay witness and would not have been allowed to opine whether Seeley knew right from wrong during the time she

worked with Seeley. Garretson did relate as to some of the moods she observed in Seeley as follows:

> Q  Joanne – or Ms. Seeley, did there come a time that you left, you quit working for her?
>
> A  Yes, because I couldn't take it anymore.
>
> Q  Okay. What about that couldn't you take?
>
> A  Well, because everything was constantly changing. And one minute she was happy, and the next minute she was sad. And it was on an everyday basis. One day she loved you, the next day she hated you.
>
> Q  That made it a difficult work environment?
>
> A  It made my blood pressure go up to the point because when she wouldn't speak to you, you never knew what you did or what somebody said you did.

(Doc. 160 at p. 9, lines 4-15.) While this testimony was limited, it did give the jury some idea of Seeley's erratic behavior. Any further evidence of bizarre behavior, Ulrich opined, would jeopardize or be inconsistent with their "good faith" defense. (Doc. 148 at p. 129.) This claim by Seeley is part of her ongoing complaint as to Ulrich's trial strategy. This claim does not amount of incompetency and is without merit.

### 5. Failure to Investigate Mitigating Evidence

The government introduced at trial a summary exhibit that listed all of the properties referenced in the indictment. Prior to trial, Ulrich filed a motion in limine to preclude at trial the introduction of the summary exhibit. The motion was denied. Ulrich also covered this matter in post trial motions, which was also denied. Seeley claims that Ulrich should have presented evidence that these transactions were valid; however, Seeley has never presented evidence as to any transaction that she claims were valid.

7

At the § 2255 hearing, Ulrich testified that the defense would have remained the same, regardless of the introduction of the 27 properties, i.e., reliance on the "good faith reliance on advice of counsel" strategy. This claim is without merit.

6. Recruitment of James Deardorff

The indictment alleges that Seeley was the owner and operator of S&D Property Solutions. The government alleged that Seeley recruited James Deardorff to work with her. Seeley claims these factual allegations are incorrect and that Ulrich was incompetent for not rebutting these allegations. Deardorff was listed as the owner or incorporator of S&D Property Solutions. (Doc. 148 at p. 132.)

This issue is a non-issue in this case. It does not have any relevance to guilt or innocence and Seeley does not present any testimony to that effect. In fact, Seeley acknowledges that Ulrich did not fail to develop evidence on the issue of recruitment. (*Id*. at p. 61.) This issue is without merit.

7. Failure to Disclose to Court Breakdown of Communication Between Seeley and Counsel Prior to Trial and Sentencing

The communication problem alleged by Seeley lies primarily with Seeley. Seeley was in Texas during pretrial months. She would not speak to Ulrich by telephone unless her husband was present. (Doc. 140 at p. 37.) She also preferred to communicate via e-mail. (*Id.* at p. 40.) Seeley acknowledged that this is not the most effective way to communicate when criminal proceedings are involved. (*Id*. at p. 41.)

The communication problem caused Ulrich to fly to Texas to meet and communicate directly with Seeley. Ulrich and Seeley spent the greater part of a day going over plea agreements and the evidence and charges against her. This meeting resulted in thirteen pages of hand-written notes made by Ulrich during the course of

the day. (Govt. Ex. 1.) Prior to trial, there were face-to-face meetings on a daily basis in aid of her defense. (Doc. 148 at pp. 125-26.) Failure to communicate cannot be laid to rest upon Ulrich. This claim is without merit.

### 8. Stipulation of Loss

The Presentence Report concluded that the total loss in the case was $4,294,878.00. This would have added 18 offense levels to Seeley's guideline range. The government and defense counsel stipulated to a loss of $2.4 million, which reduced the added offense level to 16. The government also agreed to abandon 2 levels for obstruction of justice, which further reduced Seeley's offense level by four levels. Seeley claims she was not aware of these agreements.

At a lunch meeting with Seeley at which Hang Lai and Rich Garvey, both of the Public Defender's Office, were present, Ulrich presented the stipulation to Seeley. (Doc. 148 at p. 134.) Ulrich testified that no pressure was placed on Seeley to accept the stipulation and was prepared to attack the amount of loss at the sentencing hearing. As the government notes, the stipulation substantially reduced Seeley's sentence. The effect of this stipulation was explained to Seeley. (Doc. 148 at p. 134.) No pressure was applied to Seeley to accept this stipulation (*id.*), to which she ultimately agreed.

It is difficult to comprehend how an attorney's effort to get a guideline sentence reduced for the benefit of a client can be deemed ineffective or incompetent. This issue is without merit.

### 9. Failure to Call Satisfied Investors as Defense Witnesses

Seeley claims that she provided Ulrich with the names of satisfied investors that she felt would have been beneficial to her defense. (Doc. 148 at pp. 69, 70-01.) Ulrich testified that prior to and at trial, she concentrated on the eight properties that were the subject of the trial. (*Id.* at p. 131.) The other properties were

not investigated for trial purposes but were investigated prior to sentencing. About 25 property owners were found and an attempt was made to interview them. Some would not talk, of the others, only two were favorable and those were brought in for the sentencing hearing. (*Id.*) Ulrich further testified that these favorable witnesses would not have affected the defense of "good faith reliance on advice of counsel." (*Id.* at p. 132.)

The introduction of evidence of satisfied customers at the trial would not have been relevant as a defense to the fraud charges involving the eight property transactions in the indictment. At most, two witnesses, Contreres and Smith, were introduced at the sentencing hearing. the testimony of satisfied customers at most might have affected the amount of the loss involved in this case, which Ulrich was prepared to fully contest at sentencing. (Doc. 148 at p. 134.) As a result of the stipulation as to loss, such testimony was not necessary at the sentencing hearing. This issue is without merit.

10 & 11. Failure to Request Competency Hearing Prior to Sentencing and Failure of Trial Court to Request Competency Hearing Prior to Sentencing

Habeas counsel has addressed these two issues together and so shall this court. Seeley claims that it should have been clear that a competency hearing was necessary as evidenced in a letter she wrote to this court sent in June 2012. (Doc. 145, Pl. Ex. 7.) In that letter, Seeley requests the appointment of new counsel. The letter listed a series of complaints about Ulrich. An email was sent to Seeley by the court in which Seeley was advised that her complaints should be raised in a post-sentencing motion pursuant to 28 U.S.C. § 2255. (Doc. 145, Pl. Ex. 8.) At the request of Ulrich, however, an *ex parte* hearing was held to address the complaints stated in Seeley's letter. That hearing was held on July 11, 2012. (*See* Doc. 140.)

During the *ex parte* hearing, Seeley testified for a considerable length of time. This court not only observed her demeanor and assistance to counsel during the trial but observed her for two hours during the *ex parte* hearing. There was nothing in Seeley's conduct that put this court on notice that she was incompetent.

On July 16, 2012, five days after the *ex parte* hearing, Seeley wrote a letter to Ulrich that stated, in part:

> Everytime I turn around you guys are on top of things and I don't know what I did to deserve you all but whatever it was, I am grateful Lori and I know you said I do not have to apologize for last week but I do Lori because what I put you through was wrong and I am truly sorry. I am truly sorry for not being able to see what you all are trying to do for me . . . .
>
> Anyway THANK YOU!!! Thank you for fighting for me when I can't fight for myself. You deserve a medal for having to deal with me and I know it must have been a lot more work for you and I am sorry.
>
> Is there something I can do for you Lori to make right my complaint to the judge about you? I want to write her a letter if this is appropriate to do because I want her to know that I was wrong for what I was thinking and I want her to know how hard you really have had to work to help me.

(Doc. 145, Govt. Ex. 2.)

At the sentencing hearing, Dr. Compton testified as follows:

Q   Just so we're clear, with Bipolar I disorder with psychotic features, it's not something that she would have which would have impacted her ability to distinguish right from wrong everyday during that period; correct?

A   Absolutely not. It would not have.

Q   It's something that you can be manic and then you can go through periods of relative stability?

A   You can.

(Sealed Transcript – Testimony of Kristi Compton during Day 1 of Sentencing Hearing, Doc. 155, at p. 6, line 20 to p. 7, line 2.)

11

> Q ... it is not probable that she was either acutely manic or severely depressed during the entire two-year period she operated S&D Property Solutions?
>
> A Correct.

(*Id*. at p. 9, lines 16-23.)

> Q Of course, you found that she was not insane at the time of the offense?
>
> A I did.

(*Id*. at p. 10, lines 11-13.)

> A I found that she did not meet the criteria for legal insanity in my opinion.

(*Id*. at p. 23, lines 17-18.)

Dr. Compton also testified whether Seeley qualified for a departure under 5K2.13, Diminished Capacity, under the United States Sentencing Guidelines:

> Q ... I noted in your report, you said that it's not probably – quote, not probable, end quote, that Seeley was either acutely manic or severely depressed during the entire time period.
>
> A That's correct.
>
> Q And there were – ... quote, likely periods of relative stability in which she would have been capable of processing what was occurring?
>
> A That's correct.

(*Id.* at p. 35, line 19 to P. 36, line 2.)

Attorney Ulrich fulfilled her duty to Seeley at sentencing in having Dr. Compton testify as to Seeley's mental condition both during the period of the criminal offense and in trying to get a reduction of sentence pursuant to USSG § 5K2.13.

This court having heard directly from Dr. Compton at the sentencing hearing, did not find a need to seek another competency examination, and was not

12

required to grant a downward departure. Based on Dr. Compton's testimony, a variance was given to Seeley based on her mental conditions. Therefore, counsel was not ineffective for failing to seek a competency hearing prior to sentencing. This claim has no merit.

**III.     Conclusion**

For the foregoing reasons, this court finds that attorney Lori Ulrich[3] has not been incompetent in any of the areas claimed by Seeley. The motion will be denied. An appropriate order will be issued.

s/Sylvia H. Rambo<br>United States District Judge

Dated: April 8, 2013.

---

[3] This court has given credibility findings in favor of attorney Ulrich. This court has known of and observed her performance for 20 years. She has always been forthright with the court, fights very hard for her clients, and is extremely competent.

13

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA** : CASE NO. 1:11-CR-056
:
:
**v.** :
:
:
**JOANNE M. SEELEY** :

# **O R D E R**

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 122) is **DENIED**.

2) This court declines to issue a certificate of appealability.

3) The Clerk of Court shall close the file.

s/Sylvia H. Rambo<br>United States District Judge

Dated: April 8, 2013.